UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SPIN MASTER LTD. and SPIN MASTER,
INC.,

                    Plaintiffs,

           -against-

13385184960@163.COM, et al.,

                   Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**

18-CV-10524 (LGS) (KNF)



KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

*Plaintiffs' Letter-Motion Docket Entry No. 64*

      This case has been referred to the undersigned for an inquest on damages after default. Before the Court is the plaintiffs' May 16, 2019 letter-motion, requesting "that the Court continue to authorize the alternative methods of service on Defendants previously authorized by the TRO and PI Order." The plaintiffs contend that "[i]n their initial Application, Plaintiffs sought, among other relief, an order authorizing alternative service upon Defendants. (Dkts. 13-16.) As detailed in Plaintiffs' Memorandum of Law filed in support of their Application," the plaintiffs requested an order permitting service on the defendants via a "combination of electronic methods: 1) registered electronic mail and 2) website publications," which was granted. The November 28, 2018 Preliminary Injunction Order deemed service of that order effective if completed by one of the following means:

> Delivery of (i) a PDF copy of this PI Order or (ii) a link to a secure website (including Dropbox.com, NutStore.com, a large mail link created through RPost.com or via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this PI Order, to Defendants' e-mail addresses, as identified in Schedule A or having otherwise been determined.

1

The plaintiffs assert "that service through electronic methods remain appropriate and necessary in the instant matter" because

> China-based counterfeiters, such as Defaulting Defendants, often use as aliases, false addresses and other incomplete identification information to shield their true identities. *See* Application Memo of Law, Section III(D); [Spencer] Wolgang ["Wolgang"] Dec., ¶¶ 13-15. Although Plaintiffs received limited third-party discovery from ContextLogic and the Financial Institutions, such discovery is incomplete, especially regarding Defaulting Defendants' identities. Moreover, by defaulting, Defaulting Defendants completely deprived Plaintiffs of the ability to gather additional information through discovery, including accurate or complete addresses.

According to the plaintiffs, courts in this district "routinely authorize alternative methods of service upon the defendants of all documents filed and/or entered in the case, including those filed and/or entered subsequent to the entry of a preliminary injunction order," such as "*WowWee Group Limited v. Haoquin, et al.,* No. 17-cv-9893," where the court "held, under circumstances identical to those at bar, that the plaintiffs were permitted to continue to effectuate service by alternative means at the inquest stage."

In Section III (D) of the plaintiffs' memorandum of law, referenced in their May 16, 2019 letter, styled "PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS," the plaintiffs asserted:

> Fed. R. Civ. P. (4) governs service on Defendants in the instant matter since, upon information and belief, they are located in China. While Defendants operate sophisticated commercial businesses, they are limited to correspondence by email, messaging through their respective User Accounts and communications otherwise transmitted over the Internet. *See* [Jessica] Arnaiz ["Arnaiz"] Dec., ¶¶ 6-11, Ex. A. . . . Since third-party merchants on Wish, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities and there are, in fact, no physical addresses whatsoever associated with the majority of Defendants' User Accounts, this is exactly the circumstance where the courts should exercise, as they previously have, the authority to grant alternative methods of service. . . . In the instant matter, Plaintiffs propose using Outlook.com as well as RPost (www.rpost.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the mail was sent and received. *See* Wolgang Dec., ¶ 26.

Along with service via email, Plaintiffs respectfully request that the Court, in its discretion, permit service via website publication. . . . None of the Defendants have disclosed their mailing addresses. *See* Wolgang Dec., ¶¶ 24-25. Due to Defendants' purposeful anonymity, service by email, with proper notice of this action and confirmation of delivery by RPost, and website publication is most likely to provide Defendants with proper notice of this action and Plaintiffs' claims.

Arnaiz stated, in her declaration, that she is "a Marketing Manager for New Alchemy Limited" ("NAL"), "a company that provides trademark infringement research activities" retained by the plaintiffs' law firm, Epstein Drangel LLP ("ED") "to investigate and research manufacturers, wholesalers and/or third-party merchants offering for sale and/or selling products displaying and/or incorporating the Twisty Petz Work and/or works that . . . constitute infringement" of the plaintiffs' intellectual property rights. According to Arnaiz, ED "trained us on how to identify Counterfeit Products," and NAL: (1) "identified Defendants as offering for sale and/or selling Counterfeit Products through their respective storefronts on Wish"; (2) "verified that each Defendant provides shipping to the New York address"; and (3) "through our visual inspection of the Infringing Listings . . . verified that Defendants offer shipping to the U.S." Attached to Arnaiz's declaration are "copies of Defendants' listings for Counterfeit Products" on "their respective storefronts on Wish."

Wolgang stated, in his declaration, that he is the plaintiffs' counsel and asserted, <u>inter alia</u>:

> Based on my research, Wish.com is a San Francisco, California-based, online marketplace and e-commerce platform owned by ContextLogic, Inc., a Delaware corporation ("ContextLogic"), that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale and ship their retail products, which, upon information and belief, originate primarily from China, among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York (hereinafter, "Wish"). . . . My research also revealed that international marketplaces, including the U.S., make up a significant percentage of sales made on Wish. . . . Currently, Wish is valued at over $8 billion, which is more than the market value of three of the largest traditional retailers in the U.S. . . . My research also revealed that Wish uses the

3

> internet, including Facebook, Google and Pinterest, to market itself and the products offered for sale/or sold by its third-party merchant users to potential consumers, particularly in the U.S. In fact, Wish is one of the top-five largest advertisers on the aforementioned popular search engines and social media websites. In 2015, Wish spent approximately $100 million on advertisements on Facebook alone. . . . Further, based upon my research and upon information and belief, because Wish does not require sellers to display their registered business name or trade name, contact name, complete address or any other contact information, sellers, like Defendants, use Wish as a means for selling infringing and/or counterfeit products with almost total anonymity.

More specifically, Wolgang stated in the paragraphs referenced in support of the plaintiffs' request for alternative service of process:

> 24. We also reviewed each of Defendants' User Accounts and Merchant Storefronts and confirmed that many Defendants use unidentifiable seller names unassociated with a registered business, manufacturing company or trading company. Moreover, most Defendants fail to disclose an accurate or complete address or any other contact information on their respective User Account or Merchant Storefronts on Wish.
> 25. For this reason and the reasons discussed earlier, the true identities, locations and contact information of Defendants, as well as the locations of the Counterfeit Products that Defendants are offering for sale and/or selling, are unclear and virtually impossible for Plaintiff [sic] to obtain independently.
> 26. We have used RPost's online services and confirm that its services include verifying valid proof of authorship, content and delivery of an email as well as the official time and date an email was sent and received.

***Legal Standard***

The Fourteenth Amendment to the United States Constitution protects any person from deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976 (1974). "'The fundamental requisite of due process of law is the opportunity to be heard.' This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950) (quoting Grannis v. Ordean,

4

234 U.S. 385, 394, 34 S. Ct. 779, 783 (1914)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id.

> [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.
>
> Id. at 315, 70 S. Ct. at 657.

"Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." Greyhound Exhibit Group v. E.L.U.L. Realty, 973 F.2d 155, 158 (2d Cir. 1992). "Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

*Application of Legal Standard*

No admissible evidence was presented by the plaintiffs concerning the proposed means of service deemed effective with respect to the service of the November 28, 2018 Preliminary Injunction Order, namely:

> (i) a PDF copy of this PI Order or (ii) a link to a secure website (including Dropbox.com, NutStore.com, a large mail link created through RPost.com or via website publication through a specific page dedicated to this Lawsuit accessible

5

through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this PI Order, to Defendants' e-mail addresses, as identified in Schedule A or having otherwise been determined.

The plaintiffs' contention that the defendants "are limited to correspondence by email, messaging through their respective User Accounts and communications otherwise transmitted over the Internet" is not supported by Arnaiz's declaration, referenced by the plaintiffs in support of their argument III(D), because Arnaiz's declaration does not mention anything about the defendants' correspondence limitations; rather, Arnaiz stated, in her declaration, that: (a) NAL "identified Defendants as offering for sale and/or selling Counterfeit Products through their respective storefronts on Wish"; and (b) NAL "confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective Merchant Storefronts and User Accounts and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including customers located in New York." Arnaiz did not explain anything about: (1) "Wish.com ('Wish')"; (2) "storefronts on Wish"; or (3) "Merchant Storefronts and User Accounts," nor did she claim that she has personal knowledge about or is associated with "Wish.com" or the "storefronts on Wish" or "Merchant Storefronts and User Accounts" on "Wish" or the defendants' "correspondence by email, messaging through their respective User Accounts and communications otherwise transmitted over the Internet." That is not surprising, given that Arnaiz identified herself as a "Marketing Manager" for NAL, "a company that provides trademark infringement research services," not a person with personal knowledge of: (a) "Wish.com"; (b) the way "Wish.com" operates; or (c) methods of correspondence by "Merchant Storefronts and User Accounts." No admissible evidence in the record supports the plaintiffs' contention, in their argument III(D), that the defendants "are

limited to correspondence by email, messaging through their respective User Accounts and communications otherwise transmitted over the Internet."

Wolgang did not state that his declaration is based on personal knowledge and the content of his declaration does not show that he has personal knowledge about most of the factual matter contained in his declaration. Wolgang did not make any statements concerning the proposed method of service, namely, "a PDF copy," "a link to a secure website," including "Dropbox, NutStore.com, a large mail link created through RPost.com or via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorlawsuit.com." Most of the factual assertions in Wolgang's declaration are based on his "research," which numerous footnotes in his declaration demonstrate, consists of reading information on various websites on the Internet. However, the factual assertions about which Wolgang read on the Internet are not admissible evidence based on personal knowledge; rather, they are impermissible hearsay statements offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). For example, Wolgang made the following statements without personal knowledge, based on his reading of information contained in various Internet sources: (1) "Wish.com is a San Francisco, California-based, online marketplace and e-commerce platform owned by ContextLogic, Inc., . . . that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products"; (2) "Wish has generated billions in sales worldwide"; (3) "international marketplaces, including the U.S., make up a significant percentage of sales made on Wish"; (4) "Wish is valued at over $8 billion, which is more than the market value of three of the largest traditional retailers in the U.S."; (5) "Wish uses the internet, including Facebook, Google and Pinterest, to market itself and the products offered for sale/or sold by its third-party merchant users to potential consumers,

particularly in the U.S."; (6) "Wish is one of the top-five largest advertisers on the aforementioned popular search engines and social media websites"; (7) "[i]n 2015, Wish spent approximately $100 million on advertisements on Facebook alone"; and (8) "because Wish does not require sellers to display their registered business name or trade name, contact name, complete address or any other contact information, sellers, like Defendants, use Wish as a means for selling infringing and/or counterfeit products with almost total anonymity." Some of the Internet sources on which Wolgang based his hearsay statements include "news reports," "the Better Business Bureau" and "Wish.com's Terms of Services." Some of Wolgang's factual assertions do not even indicate the source of his information, including that "sellers operating Merchant Storefronts, like Defendants, often use evasive tactics, such as aliases, false addresses and other incomplete identification information to conceal their identities and avoid detention." Wolgang's declaration also contains irrelevant assertions, such as: (i) "the Chinese Ministry of Commerce published an article regarding Epstein Drangel's involvement in litigation regarding the sale of Chinese counterfeits on e-commerce platforms"; and (ii) "a small group of attorneys represent defendants in anti-counterfeiting lawsuits similar to the case at hand, and we have been informed by said defense counsel that they closely monitor the PACER docket, looking for potential new cases and clients."

The plaintiffs rely on paragraphs 24, 25 and 26 of Wolgang's declaration in support of their contentions that: (1) "Outlook.com" is an online service and "RPost (www.rpost.com)" is "an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the mail was sent and received. *See* Wolgang Dec., ¶ 26"; and (2) "None of the Defendants have disclosed their mailing addresses. *See* Wolgang Dec., ¶¶ 24-25." Wolgang does not mention "Outlook.com" anywhere in his declaration, and his

8

assertion in paragraph No. 26 that "RPost's online services . . . include verifying valid proof of authorship, content and delivery of an email as well as the official time and date an email was sent and received" is based on the fact that "we have used RPost's online services." However, Wolgang does not have personal knowledge of "RPost's online services" and the fact that "we used RPost's online services," without more, does not establish that "RPost's online services" verify "valid proof of authorship, content and delivery of an email as well as the official time and date an email was sent and received," nor does it explain what the meaning is of those assertions. Moreover, Wolgang does not mention in his declaration "a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com" or the basis for the plaintiffs' conclusory assertion that "each Defendant will be able to download a PDF copy . . . to Defendants' e-mail addresses" on that "specific page." Wolgang's assertion that "[n]one of the defendants have disclosed their mailing addresses" is inconsistent with his assertion, in paragraph No. 24 of his declaration, that "most Defendants fail to disclose an accurate or complete address."

The plaintiffs in their memorandum of law referenced in their letter-motion rely on Fed. R. Civ. P. 4(f)(3). However, they do not contend, in their memorandum of law, that their proposed alternative means of service are not prohibited by international agreement, as required by Fed. R. Civ. P. 4(f)(3). In a footnote to their memorandum of law, the plaintiffs discuss objections by China to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, assuming, based "upon information and belief," as stated by Wolgang, that the defendants' products "originate primarily from China." Wolgang did not identify in his declaration the source of his information and the grounds for his belief that the defendants' products "originate primarily from China," let alone demonstrate that any defendant is "China-based" or "located in China," as asserted by the plaintiffs.

The plaintiffs contend, in the memorandum of law, that "service by email, with confirmation of delivery by RPost, and website publication is [sic] **most likely** to provide Defendants with proper notice." (emphasis added). The Court is not convinced that the plaintiffs' contentions, unsupported by admissible evidence, are sufficient to show that the proposed alternative means of service on the defendants of the Court's April 17, 2019 order, Docket Entry No. 58, are reasonably calculated to appraise the defendants of the Court's order and to afford them an opportunity to present their objections to the plaintiffs' inquest submissions. See Mullane, 339 U.S. at 314, 70 S. Ct. at 657. The plaintiffs' unsupported contention that the proposed method is "most likely to provide Defendants with proper notice" is insufficient, under the circumstances, to satisfy the fundamental requisite of due process.

*Conclusion*

For the foregoing reasons, the plaintiffs' letter-motion, Docket Entry No. 64, is denied.

Dated: New York, New York  
May 31, 2019

SO ORDERED:

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE